JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
JIM W. FANG
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Email: jim.fang@usdoj.gov
*Attorneys for the United States of America*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>     v.<br><br>ROBERT CORTEZ MARSHALL,<br><br>             Defendant. | Case No. 2:19-cr-270-JAD-BNW<br><br>**Government's Sentencing Memorandum** |

For more than a year, defendant Robert Cortez Marshall charmed his way into having hundreds of investors give him money for his business, Adz on Wheelz ("AOW"). He wined and dined his investors, showed them a Lamborghini he purportedly used for the business, and promised annual returns of more than 200% on investments. He even hired an well-known actor to help him with sales pitches. Unfortunately for the investors, it was all a sham. AOW did no business, had no revenue, and what defendant operated was essentially a Ponzi scheme. He solicited more than $5 million in investments for AOW, and investors lost approximately $3.5 million due to his fraud.

Defendant was indicted by a grand jury in a ten-count indictment on October 16, 2019, charging him with wire fraud and money laundering, and he was initially released on bond pending trial. But, as detailed below, his fraudulent ways did not stop there. He lied to

the Court, violated multiple conditions of his release, and committed new crimes—some of the conduct occurred after he had already signed, and the Court accepted, a plea agreement with the government, and while he was detained at the Nevada Southern Detention Center ("NSDC").

Given defendant's history of continuing fraud, even after he was indicted, and the fact that he already received a significant reduction in sentence as part of the plea agreement, defendant is undeserving of any further downward variance. Accordingly, the Court should sentence defendant to the government's recommended sentence of 37 months imprisonment.

## I. FACTUAL BACKGROUND

As stated above, defendant was indicted on October 16, 2019, for his fraud in the AOW Ponzi scheme. ECF No. 1. The factual circumstance regarding this scheme is adequately summarized in the Presentence Investigation Report. The government, instead, takes this opportunity to fully apprise the Court of defendant's misconduct after his initial indictment.

Defendant made his initial appearance on October 17, 2019, during which he was released on a personal recognizance bond pending trial. ECF No. 10 at 1. As part of his release conditions, a curfew was imposed upon defendant, he was subjected to location monitoring, and had his travel restricted to Clark County, Nevada. *Id.* at 3-5. On December 16, 2019, defendant filed a motion to modify his conditions of release, requesting the Court to (1) allow travel outside of Clark County for work purposes, and (2) remove his location monitoring condition due to an automobile accident in which he suffered injuries, and the location monitoring device was hampering his ability to receive medical treatment. *See* ECF No. 18. In his motion, defendant specifically stated that he was an employee of United

Franchise Partners, LLC and Meal Prep Network, and his work required travel across the United States. *Id.* at 4. To support his assertion, defendant submitted a letter from someone who was purportedly the General Manager of the companies. *Id.* at 7. This, as it turns out, was a lie; in reality, defendant was the owner of the companies. *See* ECF Nos. 61 at 6; 73 at 3. Defendant also misrepresented to the Court on at least two occasions that Pretrial Services did not object to his requests to modify release conditions, when Pretrial Services made no such representations. ECF No. 35 at 2.

Beyond the lies and misrepresentations, defendant also did not stop his criminal ways. On March 16, 2021, the grand jury returned a superseding indictment against defendant, charging him, in addition to the original ten counts in the initial indictment, eight more counts for four separate instances of bank fraud and money laundering, all committed while he was on pretrial release in the instant matter. *See* ECF No. 61 at 5-11. In addition, on March 3, 2021, Pretrial Services filed a petition for summons on conditions of pretrial release against defendant, alleging that he obtained a credit card without authorization and failed to report as required on more than a dozen occasions. *See* ECF No. 58. This is consistent with and corroborates defendant's behavior of conducting financial transactions without knowledge and approval from Pretrial Services in violation of his release conditions. The petition was also amended to include the new law violations after the superseding indictment was filed. *See* ECF No. 65. Unsurprisingly, as a result, defendant's pretrial release was revoked, and he was detained pending trial. ECF No. 75. Thereafter, defendant entered into a plea agreement with the government, which was accepted by the Court. ECF Nos. 98, 99.

Later, both the government and the Court received letters from one Harold Sobel, the defendant in *United States v. Sobel*, No. 2:21-cr-235 (D. Nev. indicted Aug. 24, 2021). *See,*

3

*e.g.*, ECF No. 133. The letters accused defendant of defrauding Sobel. As a result, the government discovered that when both Sobel and defendant were detained at NSDC, both appeared to have conspired to blackmail and extort another suspect in the *Sobel* matter, demanding that he provide defendant and Sobel with $6.5 million in cryptocurrency, in exchange for Sobel's silence regarding said suspect's involvement in the *Sobel* criminal charges. *See* Ex. A (a conversation, on September 9, 2021, between defendant and the victim about providing $6.5 million in cryptocurrency so that the victim will not be implicated in the *Sobel* matter); Ex. B (a conversation, on September 10, 2021, between Sobel and the victim, in which Sobel referenced an individual named "Robert" as the person who spoke with the victim previously, and subsequently Robert spoke to the victim in the same call); Ex. C (a conversation, on September 10, 2021, between Sobel, Robert, and the victim regarding payment in exchange for not implicating the victim in the *Sobel* case); Ex. D (a conversation, on September 22, 2021, between Robert and the victim, expressing Sobel's disappointment that the victim did not follow through with payment, and further negotiating payment in cryptocurrency to avoid implicating the victim in the *Sobel* matter).[1] Sobel subsequently pled guilty in his criminal matter, and admitted to his participation in the extortion scheme in the plea agreement. *See Sobel*, No. 2:21-cr-235, ECF No. 52 at 10-12 (further describing the monetary demands Sobel made to the extortion victim in exchange for silence).

There were also other suspicious activities defendant conducted that, while not outright lies or illegal, again calls into question his honesty and candor. On March 24, 2022,

---

[1] The government attaches to this memorandum the sworn affidavit of Postal Inspector Jessica Nielsen, who positively identified the individual known as "Robert" in these jail call recordings to be defendant Robert Cortez Marshall. *See* Ex. E.

4

defendant filed a motion to modify release conditions, in which he requested, among other things, that he be allowed to open a bank account and deposit an inheritance check from his grandmother he purportedly received.[2] ECF No. 117. The government opposed the motion in part, to that specific request, arguing that said check should be used for restitution purposes as agreed to in the plea agreement. ECF No. 119 at 2-5. Concurrently, the government filed a motion to prevent defendant from transferring and dissipating the inheritance check. ECF No. 120. The government also requested to see a copy of this check, which defendant never provided. Thereafter, defendant withdrew his motion to modify release conditions. ECF No. 121.

Having been reminded of his restitution obligations under the plea agreement, defendant counsel reached out to the government, and the parties filed a stipulation to open an account with the Clerk of Court, so that defendant may deposit presentence restitution with the Court. ECF No. 123. It was the government's expectation that defendant would turn over and deposit said inheritance check with the Court as restitution. To date, the Clerk's Office confirmed that no deposit has been made by defendant for restitution. The government suspects that no inheritance check ever existed.

## II.     SENTENCING STANDARD

Title 18, Section 3553(a) of the United States Code lays out the factors the Court should consider when imposing a sentence. They include:

(1) the nature and circumstances of the offense and the history and characteristics of
  the defendant;

---

[2] Defendant had been released pending sentencing to home confinement upon parties' stipulation. *See* ECF Nos. 107, 111.

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Although courts normally focus on factors (1) and (2) above, and rely on Probation to determine and calculate the sentencing options under (3) and (4), all of the factors above must be considered by the Court. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Dibe*, 776 F.3d 665, 670 (9th Cir. 2015).

### III.   DISCUSSION

The Court should sentence defendant to the government's recommended sentence of 37 months. Despite securing such a generous deal with the government, defendant did not view it as a real chance to change his ways. Instead, he conspired with another individual, or at the very least aided and abetted said individual, in the extortion of a third party. Based on the letters from Sobel, which is a stark contrast to the state of affairs between defendant

and Sobel as depicted in the attached jail call recordings, it is likely there was a falling out between them, and if Sobel's allegations are to be believed, defendant defrauded Sobel as well.

Sadly, this is consistent with defendant's post-indictment behavior and speaks to defendant's disregard for the consequences of his actions, his indifference to the rule of law, his propensity for criminal conduct, and most of all, his willingness to lie and cheat to achieve his objectives. In light of his conduct, the government views defendant as a significant risk of recidivating. Accordingly, in examining the § 3553(a) factors, defendant's post-indictment conduct is a clear indication that further downward variance is unwarranted, and the Court should sentence defendant to the government's recommended sentence of 37 months imprisonment.

## IV.     CONCLUSION

For the foregoing reasons, the government respectfully requests the Court to impose a custodial sentence of 37 months as the appropriate and just punishment against defendant.

DATED this 28th day of December, 2022.

JASON M. FRIERSON
United States Attorney

*s/Jim W. Fang*
Jim W. Fang
Assistant United States Attorney